IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| CARLOS FLORES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| vs. ) | |
| ) | Case No. 1:24-CV-03503 |
| WICKHAM INVESTMENTS LLC and ) | |
| AMERICAN DAIRY QUEEN CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW, CARLOS FLORES, by and through the undersigned counsel, and files this, his Complaint against Defendants, WICKHAM INVESTMENTS LLC and AMERICAN DAIRY QUEEN CORPORATION, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' WICKHAM INVESTMENTS LLC and AMERICAN DAIRY QUEEN CORPORATION, failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff, CARLOS FLORES (hereinafter "Plaintiff"), is and has been at all times relevant to the instant matter, a natural person residing in Thornton, CO (Adams County).

3. Plaintiff is disabled as defined by the ADA.

1

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5. Plaintiff uses a wheelchair for mobility purposes.

6. In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7. Defendant, WICKHAM INVESTMENTS LLC (hereinafter "WICKHAM INVESTMENTS LLC") is a domestic limited liability corporation that transacts business in the State of Colorado and within this judicial district.

8. Defendant, WICKHAM INVESTMENTS LLC, may be properly served with process via its Registered Agent, to wit:  c/o Ronald C. Wickham, Registered Agent, 10632 Wolff Way, Westminster, CO  80031.

9. Defendant, AMERICAN DAIRY QUEEN CORPORATION (hereinafter "AMERICAN DAIRY QUEEN CORPORATION") is a  foreign corporation that transacts business in the State of Colorado and within this judicial district.

10. Defendant, AMERICAN DAIRY QUEEN CORPORATION, may be properly served with process via its Registered Agent for service, to wit: c/o CT Corporation System, Registered Agent, 7700 E. Arapahoe Road, Suite 222, Centennial, CO 80112.

## FACTUAL ALLEGATIONS

11. On or about October 28, 2024, Plaintiff was a customer at "Thornton DQ Grill and Chill," a restaurant located at 10140 Grant Street, Thornton, CO 80229 referenced herein as "DQ Grill". *See* Receipt attached as Exhibit 1. *See* also photo of Plaintiff attached as Exhibit 2.

12. Defendant, WICKHAM INVESTMENTS LLC, is the owner or co-owner of the real property and improvements that DQ Grill situated upon and that is the subject of this action, referenced herein as the "Property."

13. Defendant, AMERICAN DAIRY QUEEN CORPORATION, is the lessee or operator of the real property and improvements that are the subject of this action.

14. Defendant, WICKHAM INVESTMENTS LLC, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, WICKHAM INVESTMENTS LLC, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

15. Plaintiff's access to the DQ Grill, located at 210140 Grant Street, Thornton, CO 80229, Adams County Property Appraiser's property identification number 0171915102025 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited

3

because of his disabilities, and he will be denied and/or limited in the future unless and until Defendants are compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

16. Plaintiff lives 8 miles from the Property.

17. Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

18. Plaintiff has visited the Property three times before as a customer and advocate for the disabled. Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again. The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

19. Plaintiff intends on revisiting the Property to purchase food as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

20. Plaintiff travelled to the Property as a customer three times before as a customer, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

21. Although Plaintiff may not have personally encountered each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and

advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

22. Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

23. On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

24. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii) discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv) individuals with disabilities continually encounter various forms of

5

    discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

25. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

  \* \* \* \* \*

(iv) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

26. The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

27. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

28. The Property is a public accommodation and service establishment.

29. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

30. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

31. The Property must be, but is not, in compliance with the ADA and ADAAG.

32. Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

33. Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

34. Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, have discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

35. Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

36. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

    i. Due to an inadequate policy of parking lot maintenance or a lack thereof, the three accessible parking spaces are not adequately marked so as to adequately gauge the width of accessible parking spaces and the presence of an access aisle and is therefore in violation of Sections 502.1 and 502.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space and may cause other vehicles to

      unknowingly park in the accessible parking space decreasing the available width to Plaintiff.

ii. The accessible curb ramp providing an accessible route leading from all accessible parking spaces lacks a clear and level area at the top of the ramp of at least 36 inches in length past the top of the ramp in violation of Section 406.4 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the public accommodations offered at the Property because a clear and level landing is necessary for Plaintiff to safely turn from the ramp towards the entrances, by not having a clear and level landing, Plaintiff is forced to turn on a sloped surface which can cause the wheelchair to tip over and cause injury.

iii. Due to the barrier identified in (ii) above, the surfaces of the accessible route have turning space with a surface slope in excess of 1:48 in violation of Section 304.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to utilize this surface as an accessible route as it will increase the likelihood of Plaintiff tipping over in their wheelchair and injuring themselves.

iv. The surfaces of the accessible route leading to and from the accessible parking spaces, as well as from the route leading from the public sidewalk have a cross slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive

9

      cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

  v. Two of the three accessible parking spaces have a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

  vi. The accessible ramp serving the three accessible parking spaces has a vertical rise at the base that is in excess of a ¼ of an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

  vii. Due to the placement of large black trashcans in the exterior accessible route leading from the accessible parking spaces, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the rest of the units of the Property as Plaintiff's wheelchair would not be able to get past this barrier.

10

viii. Due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route causing the exterior access route to routinely have clear widths below the minimum thirty-six (36") inch requirement specified by Section 403.5.1 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

ix. Due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route as a result, in violation of Section 502.7 of the 2010 ADAAG Standards, parking spaces are not properly designed so that parked cars and vans cannot obstruct the required clear width of adjacent accessible routes. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

x. Due to the barriers to access identified in (ii), (iii), (iv), (vii), (viii) and (ix), the Property lacks an accessible route from the three accessible parking spaces to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the public accommodation on the Property.

xi. Due to the barriers to access identified in (ii), (iii), (iv), (vii), (viii) and (ix), the Property lacks an accessible route connecting accessible facilities,

11

        accessible elements and/or accessible spaces of the Property in violation of Section 206.2.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property.

xii.  There is a ramp leading from the public sidewalk to the accessible entrance of the Dairy Queen, however, where the ramp meets the public sidewalk, There is a vertical rise in excess of ¼ inch along the accessible route in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features from the public sidewalk of the Property as vertical rise in excess of ¼ inch may cause Plaintiff's wheelchair to snag on the vertical rise and tip over.

xiii.  The walking surfaces of the accessible route leading from the public sidewalk to the accessible entrance has a slope in excess of 1:20. As the accessible route is in excess of 1:20, it is considered an accessible ramp, moreover, it has a total rise greater than six (6) inches, yet does not have handrails in compliance with Section 505 of the 2010 ADAAG standards, this is a violation of Section 405.8 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property from the public sidewalk and using public transportation as ramps are often more difficult for disabled individuals to traverse and require handrails on both sides so that the disabled individual can use the handrail to assist them up the sloped surface.

xiv. The Property has an accessible ramp leading from the public sidewalk to the accessible entrance that has multiple changes in direction with no level landings or level turning surfaces in violation of Section 405.7.4 of the 2010 ADAAG standards. This barrier to access increases the danger to Plaintiff of falling off the edge of the turn and/or increases the likelihood of Plaintiff tipping when having to make turns on sloped surfaces.

xv. Due to the barriers to access identified in (iv), (vii), (viii), (ix), (xii), (xiii), and (xiv), the Property lacks an access route from site arrival points such as the public sidewalk to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the Property.

xvi. At Dairy Queen, there is not at least 5% (five percent) of the exterior dining surfaces provided for consumption of food or drink that comply with Section 902.2 of the 2010 ADAAG standards, requiring appropriate knee and toe clearance complying with Section 306 of the 2010 ADAAG standards, positioned for a forward approach, in violation of Section 226.1 of the 2010 ADAAG standards.  If Plaintiff were to eat at the Property in the future, this barrier to access would prevent Plaintiff from using the exterior dining surfaces currently present at Dairy Queen as Plaintiff's own feet would block Plaintiff's ability to access the dining surfaces.

xvii. There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010

        ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

xviii. Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**DAIRY QUEEN RESTROOMS**

xix. The restroom door requires an opening force in excess of 5lbs (five pounds) in violation of Section 309.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

xx. The restroom door, when exiting, lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent wall, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

xxi. The accessible toilet stall door is not self-closing and violates Section 604.8.1.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely and privately utilize the restroom facilities.

xxii. The accessible toilet stall door swings into the clear floor space required by the stall and violates Section 604.8.1.2 of the 2010 ADAAG standards. This

barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

37. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

38. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

39. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

40. All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

41. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

42. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, have the financial resources to make the necessary.

43. Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at KFC and the Property is readily achievable because Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, have the financial resources to make the necessary modifications. Dairy Queen has approximately 6,800 locations world-wide, with an annual revenue in 2023 of over $3.6 billion.

44. The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

45. Upon information and good faith belief, the Property has been altered since 2010.

46. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

47. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

48. Plaintiff's requested relief serves the public interest.

49. The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION

50. Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, pursuant to 42 U.S.C. §§ 12188 and 12205.

51. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, to

modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, in violation of the ADA and ADAAG;

(b) That the Court issue a permanent injunction enjoining Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, from continuing their discriminatory practices;

(c) That the Court issue an Order requiring Defendants, WICKHAM INVESTMENTS LLC AND AMERICAN DAIRY QUEEN CORPORATION, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d) That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e) That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: December 18, 2024.   Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

18